*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

JAMES M. MOORE, Individually, and as Trustee
of the JAMES M. MOORE TRUST,

        Plaintiff/Counterdefendant-
        Appellee,

v

JAMES ERIC MOORE and LISA MOORE,

        Defendants/Counterplaintiffs-
        Appellants.

UNPUBLISHED
July 23, 2019

No. 343266
Wayne Circuit Court
LC No. 13-013143-CH

JAMES ERIC MOORE and LISA MOORE,

        Plaintiffs-Appellants,

v

GLENDA MOORE,

        Defendant-Appellee.

No. 343686
Wayne Circuit Court
LC No. 14-000623-CH

Before: TUKEL, P.J., and JANSEN, and RIORDAN, JJ.

PER CURIAM.

       In Docket No. 343266, defendants/counterplaintiffs, James Eric Moore (Eric) and Lisa Moore (Lisa), appeal as of right the trial court's order granting summary disposition and quieting title to real property to plaintiff, Eric's father, James M. Moore (James), individually, and in his capacity as trustee of the James M. Moore Trust (the Trust), and denying summary disposition to appellants. This is the second appeal in this case. See *Moore v Moore*, unpublished per curiam opinion of the Court of Appeals, issued March 15, 2016 (Docket No. 324468). In the instant appeal, appellants argue that the trial court erred by determining that (1) they were not entitled to

-1-

specific performance of a purchase agreement based upon their being in breach of the contract, and (2) they were not entitled to imposition of a constructive trust to preserve their interest in the real property that was the subject of the contract. We affirm.

In Docket No. 343686, plaintiffs-appellants, Eric and Lisa, appeal as of right the trial court's order granting summary disposition to defendant, Glenda Moore (Glenda), and denying summary disposition to appellants. This is the second appeal in this case. See *Moore v Moore*, unpublished per curiam opinion of the Court of Appeals, issued March 17, 2016 (Docket No. 324470). In this instant appeal, appellants argue that the trial court erred in determining that (1) Glenda did not unjustly interfere with the purchase agreement or a business expectancy, (2) appellants did not actually have a business expectancy or contractual relationship to interfere with based upon their being in breach of the purchase agreement, and (3) appellants were not entitled to relief on their intentional infliction of emotional distress claim. We affirm.

I. FACTUAL BACKGROUND

A. DOCKET NO. 343266

This is the second appeal in this matter. This Court previously summarized the factual background of this case as follows:

This case arises from a long-simmering disagreement between plaintiff, James M. Moore, and his son, defendant James Eric Moore, regarding a 10-acre parcel of property in Romulus, Michigan. Father purchased adjoining 5- and 10-acre parcels in 1990, and son moved into the house on the 10-acre parcel shortly thereafter. Later that year, father and son drew up a handwritten purchase agreement, which son refers to as a land contract, providing for son's periodic payments culminating in a payment of the full purchase price of the 10-acre parcel. Son remained on the property, paying taxes and property insurance but no rent, until relations deteriorated between son and father's wife, Glenda Moore, around 2013. Father filed an eviction action against son that same year, but stipulated to dismissal of the action shortly after. Father then filed a quiet-title action, and defendants filed a counterclaim, requesting specific performance of the alleged land contract and alternatively, asserting ownership by way of adverse possession. Father filed a motion for summary disposition on the counterclaim, which the trial court granted. The trial court simultaneously entered an order quieting title to the property. [*Moore*, unpub op at 1 (footnote omitted).]

This Court ultimately reversed "the trial court's ruling that the land contract violated the statute of frauds[,]" concluding that the handwritten "purchase agreement" was in writing and signed by the father, which was sufficient to satisfy MCL 566.106. *Id*. at 3. However, this Court declined to make any decision regarding the validity of the "purchase agreement" as a land contract, whether defendants had complied with the land contract, or whether defendants were entitled to specific performance of the land contract, and remanded the matter back to the trial court for further proceedings. *Id*. at 3-4. This Court also concluded that son had failed to establish all the elements required to prove adverse possession of the property, but that the trial court had abused its discretion in denying son's request to amend his counterclaim to include claims for equitable

-2-

relief, including the imposition of a constructive trust, waiver, and undue influence by Glenda. *Id*. at 4-5.

On remand, son and his wife filed an amended counterclaim requesting either specific performance on the land contract, or the imposition of a constructive trust to give effect to the agreement between father and son. Father filed a second motion for summary disposition, arguing that to the extent that the land contract was valid, son was in breach for failure to make the requisite payments. Additionally, father argued that conditions did not exist for imposition of a constructive trust because "it [was] undisputed that there [was] no inequity involved." Any money that son had used to make improvements on the property constituted rent, and moreover, any improvements were not approved by father. Finally, father argued there was no evidence of fraud, misrepresentation, concealment, undue influence, or duress, and without one of those, a constructive trust was inappropriate.

The trial court denied father's second motion for summary disposition, finding that material questions of fact remained as to whether son had breached the land contract. Although son failed to make payments under the land contract, son testified at his deposition that he had made payments for two years, and then offered payment in full on multiple occasions. Regarding the constructive trust, the trial court concluded that there was evidence that father had indicated to son that the property belonged to son and would be willed to him.

Following a failed attempt at mediation, son and his wife filed a motion for summary disposition, and argued that there were no genuine issues of material fact with respect to Glenda's undue influence over father. Based on the fiduciary relationship between Glenda and father, father's susceptibility to persuasion by Glenda, Glenda's dislike of son, and Glenda's possible desire to preserve a marital interest in the property, son and his wife argued that they were entitled to a presumption of undue influence and the imposition of a constructive trust. Father filed a cross-motion for summary disposition, his third summary disposition motion, again arguing that son was in breach of the land contract and that there was no evidence that son ever intended to comply with his obligations under the contract, and that the circumstances did not give rise to the imposition of a constructive trust. This appeal followed.

Following argument on the motions, the trial court issued its opinion and order granting summary disposition in favor of father, and denying summary disposition to son and his wife. The trial court concluded that son was in breach of the land contract and therefore was not entitled to specific performance. Son and his wife had "supplied [no] evidence of regular, periodic payments under the land contract over the twenty-seven years in which [son] had resided on the property." Further, any improvements to the property would not constitute payment under the land contract because the contract provided that any improvements would run with the land. Because of son's breach, father was entitled to summary disposition and quiet title. Finally, because there was no evidence that son and his wife made good faith payments on the land contract for more than two years, there was no inequity to justify the imposition of a constructive trust.

## B. DOCKET NO. 343686

This is also the second appeal in this matter. This Court previously summarized the factual background of this case as follows:

> This case arises from a disagreement between [son] and [father], over a 10-acre parcel of property in Romulus, Michigan. Father bought the property in 1990, and son moved onto the property and has lived and operated his business from there since that time. In late 1990, father and son drew up a handwritten purchase agreement for the property, akin to a land contract. Son also asked for a deed to the property multiple times over the intervening years, but father either refused or failed to convey a deed. Relations eventually soured between son, his wife Lisa, father, and [Glenda], father's third wife, culminating in father's quiet-title action filed in 2013 in the Wayne Circuit Court. While that action was pending, [son and his wife] sued [Glenda] for tortious interference with a business expectancy and tortious interference with a contract. [*Moore v Moore*, unpublished per curiam opinion of the Court of Appeals, issued March 17, 2016 (Docket No. 324470), p 1 (footnote omitted.)]

Glenda moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that she could not have interfered with a contract or business relationship between father and son because the trial court had already determined that the land contract was not valid under the statute of frauds. The trial court had agreed with Glenda, and granted summary disposition in her favor. However, this Court reversed and remanded the matter back to the trial court, concluding that because in Docket No. 324468, the trial court had erred by determining that the land contract violated the statute of frauds, its reasoning in granting summary disposition in favor of Glenda was also flawed. *Moore*, unpub op at 3. Moreover, this Court concluded that the trial court had erroneously made conclusions of fact on issues that should have been submitted to a jury, and then used those factual findings to dispense son's claims. Accordingly, this Court remanded this matter to the trial court "for further determination by the trial court in light of [this Court's] disposition, specifically [the] holding that the [land contract] did not violate the statute of frauds." *Id*.

On remand, son and his wife amended their complaint to include an intentional infliction of emotional distress claim, arguing that Glenda had "stepped up and increased the frequency, duration[,] and intensity of her harassment[.]" Son and his wife alleged that Glenda began trespassing "individually and with others in concert with her boyfriend . . . by driving vehicles around [their] home at night shining lights in the windows and screaming epithets[,]" hired an attorney to write threatening letters threatening eviction, and instated a quiet title action. After remand, son and wife alleged Glenda began assaulting and battering the son's wife, trespassing on the parcel in question, cutting the brake lines on son's road tractor trucks, erecting barricades on the parcel in question preventing son from accessing a quarry managed by him on the property, filing complaints with the City of Romulus alleging wrong doing on the part of son and his wife, hiring persons to stalk and threaten son with physical harm, preventing father and son from communicating, and violating a temporary restraining order issued by the trial court on September 2, 2014.

-4-

Again, Glenda moved for summary disposition under MCR 2.116(C)(8) and (C)(10), and argued that son and his wife were in breach of the land contract between father and son and accordingly there was no business expectancy to interfere with. Glenda went on to argue that even if there was a business expectancy, there was no evidence that Glenda had interfered with it, there was no evidence of undue influence, and there was no evidence of intentional infliction of emotional distress. The trial court agreed, and granted summary disposition in favor of Glenda, concluding that there were no genuine issues of material fact. The trial court determined that nonpayment under the land contract constituted breach, and therefore Glenda was entitled to summary disposition on the intentional inference with a contractual relationship claim. Further, son failed to establish that an actual business relationship existed between father and son that benefited both parties, and therefore Glenda was likewise entitled to summary disposition on the intentional interference with a business relationship or expectancy claim. Finally, the trial court determined that Glenda's conduct did not "rise to the level of outrageousness required to make a valid claim for intentional infliction of emotional distress." This appeal followed.

## II. STANDARD OF REVIEW

"The trial court's ruling on a motion for summary disposition is reviewed de novo on appeal." *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 339; 830 NW2d 428 (2012), citing *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). In this case, both James and Glenda moved for summary disposition under MCR 2.116(C)(8) and (C)(10); however, the parties looked beyond the pleadings in arguing for and against the motions, and accordingly, this Court treats the motions as though they were made under MCR 2.116(C)(10) only. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017) (citation omitted).

Summary disposition under MCR 2.116(C)(10) is appropriate where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) considers documentary evidence and "tests the *factual* sufficiency of the complaint." *Dalley v Dykema Gossett*, 287 Mich App 296, 304 n 3; 788 NW2d 679 (2010), citing *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In reviewing the motion, "this Court considers 'affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, in a light most favorable to the party opposing the motion.' " *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013) (citation omitted). "[R]eview is limited to the evidence that has been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009), citing *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003).

## III. DOCKET NO. 343266

In Docket No. 323266, we conclude that the trial court properly granted summary disposition in favor of father, and denied summary disposition to son and his wife, albeit for the wrong reasons. However, a trial court's ruling will be left undisturbed where the right result was reached, but for the wrong reason. *Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320

Mich App 353, 374; 909 NW2d 1 (2017), quoting *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

Previously, this Court remanded this matter to the trial court with the following instructions:

> The [trial] court did not consider whether the land contract was valid, whether defendants complied with the agreement, or whether defendants were entitled to specific performance. We believe that these issues require consideration and determination by the trial court before we can render a decision. Accordingly, we remand to the trial court for further consideration. [*Moore*, unpub op at 3-4 (footnotes omitted).]

However, despite this directive, in considering whether son was entitled to specific performance of the land contract, the trial court again failed to consider whether the land contract was valid. Instead, the trial court concluded that because defendants failed to make "regular, periodic payments under the land contract," son defaulted and was in breach of the land contract. Therefore, the trial court reasoned, son and his wife were not entitled to specific performance.

Now on appeal, son and his wife first argue that the trial court erroneously concluded that son breached the handwritten "purchase agreement," and concluded that father is entitled to quiet title to the 10-acre parcel. Specifically, son and his wife argue that father waived his right to payment under the land contract. Because father refused to accept full payment in exchange for legal title to the property on several occasions, instead insisting that the property would be willed to son and therefore payment was unnecessary, son was induced by father to believe that father was not enforcing the payment provision of the land contract, that this belief was justified. Accordingly, son argues, father should be estopped from arguing that son breached the payment provision of the land contract.

However, this argument is premised on the belief that the land contract was valid, and in fact all parties concede for the purpose of this appeal that the land contract is valid. However, given that our review of the trial court's decision on a summary disposition motion after remand from this Court is de novo, *ZCD Trans, Inc*, 299 Mich App at 339, we must first evaluate the validity of the land contract before we can consider its enforceability. In doing so, we conclude that the land contract is not valid, and cannot be enforced.

Although father and son titled the land contract as a "purchase agreement," it is, in fact, a land contract, as it is a contract for the sale of land "in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer." *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999), quoting 1 Cameron, Michigan Real Property Law (2d ed), § 16.1, p 582. A land contract is valid where it is "definite as to parties, property, consideration, terms[,] and time of performance." *Rathburn v Herche*, 323 Mich 160, 165; 35 NW2d 230 (1948) (quotation marks and citation omitted). The land contract must satisfy Michigan's statute of frauds: it must be in writing and signed by the vendor. See MCL 566.108. Moreover, the amount of time, the time of installment payments, and the interest rate are essential elements of a land contract. *Zurcher*, 238 Mich App at 291.

Here, the land contract is deficient in that it lacks several key terms, as well as the fact that son never signed it. First, the contract does not provide for the amount to be paid in each installment after the first 365 days. Indeed, the contract provides that son will pay "monthly rent" in the amount of $150 for the first 365 days, but the amount to be paid each month after the first 365 days is missing from the contract. Although a "payment schedule sample" detailing projected payments from November 1, 1990, through January 1, 1993, is attached to the contract, there is nothing to suggest that this attachment is anything more than a "sample." Next, the length of the land contract–the total number of payments over a definite term of years–is not specified. Finally, it is unclear what the interest rate is. The contract provides that "interest rates are free the first 365 days [and t]hereafter the interest rate is 10% on 7 years." However, the contract does not provide for an interest rate after the expiration of those seven years. Without a term period, and a set schedule and amount of installment payments, son could be paying on the contract indefinitely at an unknown rate of interest. Given that the amount of time, the time of installment payments, and the interest rate are essential elements of a land contract, *Zurcher*, 238 Mich App at 291, and those elements are not present here, we conclude that the "purchase agreement" is not valid as a land contract, and any payments made by son to father would constitute rent.

Moreover, the "purchase agreement" is deficient as any type of contract because it is lacking acceptance. A valid and enforceable contract requires an offer, an acceptance that is "unambiguous and in strict conformance with the offer," and "mutual asset or a meeting of the minds on all essential terms." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452-453; 733 NW2d 766 (2006) (quotation marks and citation omitted). Here, the offer was written and signed by father, and witnessed by Glenda. An unambiguous acceptance in strict conformance with this particular offer would have required son to sign the contract. However, son admittedly never signed the "purchase agreement." In fact, son admitted in his deposition that he purposefully never signed the contract because he thought he would be inheriting the 10-acre parcel, and therefore his signature was unnecessary. Accordingly, without acceptance, this "purchase agreement" serves only as an offer to enter into a land contract.

Given that the land contract in this matter is not valid, it is impossible for son to have breached it. Accordingly, the trial court erred by concluding that son was in breach. However, because we ultimately agree with the trial court that father was entitled to quiet title, we affirm. All other issues raised by son and his wife rely on the assumption that father and son were parties to a valid land contract. Because no valid land contract existed, it is unnecessary to address son's arguments relating to the imposition of a constructive trust and Glenda's influence over father.

## IV. DOCKET NO. 343686

In Docket No. 343686, we conclude that the trial court properly granted summary disposition in favor of Glenda. Therefore, we affirm.

-7-

A. TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

Son and his wife first argue that the trial court erred in granting summary disposition in favor of Glenda because questions of material fact remain regarding whether Glenda unjustly interfered with the contractual relationship between father and son. We disagree.

> "The elements of tortious interference are (1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant." *Mahrle v Danke*, 216 Mich App 343, 350; 549 NW2d 56 (1996). " '[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.' " *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002), quoting *Feldman v Green*, 138 Mich App 360, 378; 360 NW2d 881 (1984). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v R L Polk Co*, 193 Mich App 1, 12-13; 483 NW2d 629 (1992). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l*, 251 Mich App at 131. [*Badiee v Brighton Area Schs*, 265 Mich App 343, 366-367; 695 NW2d 521, 539 (2005).]

Son and his wife must first establish the existence of a valid contract in order to sustain a claim of tortious interference with a contractual relationship. As discussed in Docket No. 343266, no valid contract existed between father and son. Therefore, son and his wife are unable to sustain their claim of tortious inference with a contractual relationship, and summary disposition in favor of Glenda is required as a matter of law. Although the trial court erroneously granted summary disposition in favor of Glenda on the basis that son and his wife were in breach of the land contract, and not because the contract was never valid, we affirm where the trial court reached the correct result for the wrong reason. *Southfield Ed Ass'n*, 320 Mich App at 374.

B. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY

Second, son and his wife argue that Glenda tortuously interfered with a business relationship or expectancy between father and son. Son and his wife argue that the trial court erroneously concluded that son failed to show an actual business relationship existed that benefited both father and son, and therefore summary disposition in favor of Glenda was unwarranted. We disagree.

"The elements of tortious inference with a business relationship [or expectancy] are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Dalley v Dykema Gosset, PLLC*, 287 Mich App 296, 323; 788 NW2d 679 (2010). Further, "a plaintiff must demonstrate that the defendant intentionally did something illegal, unethical or fraudulent" without justification. *Id*. at 323-324.

In their amended complaint, son and his wife claim that Glenda "knew that [son] enjoyed an advantageous relationship with his father whereby his father would give him a deed to the subject matter property." The amended complaint went on to allege that Glenda knew father wanted to deed the 10-acre parcel to son, and "intentionally interfered with her husband's performance of that relationship and did so in an improper manner" by "threatening her husband with abandonment, launching destructive attacks on [son's] person and property and involving the City of Romulus employees" in her crusade to "destroy the aforesaid expectancy and prevent thereby her husband from conveying the" 10-acre parcel to son.

However, to establish a valid business expectancy, a plaintiff must demonstrate that the expectancy is "a reasonable likelihood or probability[,] not mere wishful thinking." *Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 492 Mich 40, 45; 821 NW2d 1 (2012) (quotation marks and citation omitted) (alteration in original). Beyond the fact that son used the 10-acre parcel for both residential purposes and to operate his own sand and gravel business, son and his wife make no allegations that son and father had any type of business relationship. Although son arguably had some interest in the property, operating a business off his father's property is insufficient to establish a business relationship or expectancy between them. Accordingly, the trial court properly concluded that son's and his wife's tortious interference claim was without merit.

## C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Finally, son and his wife argue that the trial court erred by granting Glenda's motion for summary disposition with respect to their intentional infliction of emotional distress claim. We disagree.

To succeed on a claim of intentional infliction of emotional distress, a plaintiff must establish "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v Ford*, 237 Mich App 670, 674; 604 NW2d 713 (1999), citing *Haverbush v Powelson*, 217 Mich App 228, 234; 551 NW2d 206 (1996).

> Liability for intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id*. It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 602-603; 374 NW2d 905 (1985), quoting Restatement Torts, 2d, § 46, comment *d*, pp 72-73. In reviewing a claim of intentional infliction of emotional distress, we must determine whether the defendant's conduct is sufficiently unreasonable as to be regarded as extreme and outrageous. *Doe*, 212 Mich App at 92. The test is whether "the recitation of the facts to an average member of the community would arouse his resentment

against the actor, and lead him to exclaim, 'Outrageous!' " *Roberts*, 422 Mich at 603. [*Graham*, 237 Mich App at 674-675.]

In reviewing a claim for intentional infliction of emotional distress, "it is initially for the court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery." *Doe*, 212 Mich App at 92, citing *Sawabini v Desenberg*, 143 Mich App 373, 383; 372 NW2d 559 (1985). Where reasonable minds may differ as to that question, however, it should be left for the jury. *Doe*, 212 Mich App at 92.

Son's and his wife's claim for intentional infliction of emotional distress fails for two reasons: first, the conduct alleged did not rise to the level of outrageousness required to sustain such a claim, and second because son and his wife failed to establish severe emotional distress. Son and his wife allege that Glenda harassed them, trespassed on the 10-acre parcel, cut the brake lines of son's truck, and made "other threats and actions in the nature of assault[.]" However, we agree with the trial court who concluded that many of these allegations "were never proven to be attributable to Glenda." The conduct alleged, though unnecessary and undoubtedly stress-inducing, was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004).

Moreover, the only evidence submitted by son's wife to substantiate her claim of extreme emotional distress is a letter from her therapist indicating that several preexisting immune disorders had been exacerbated by the stress and aggravation of Glenda's "harassment." The therapist never characterized son's wife's emotional distress as "extreme," but rather characterized it as resulting in "aggravation, accompanied by significant anxiety and emotional distress." Ultimately, the therapist notes, son's wife chose to move to Florida, where they have owned property for many years, in order to "diminish contact with Glenda." However, son's wife may also have moved to Florida because of father obtaining quiet title to the 10-acre parcel in Docket No. 343266. Accordingly, the trial court properly concluded that son's and his wife's intentional infliction of emotional distress claim was without merit.

In Docket No. 343266, we affirm. Likewise, in Docket No. 343686, we affirm.

/s/ Jonathan Tukel
/s/ Kathleen Jansen
/s/ Michael J. Riordan

-10-