### DOE v MILLS

Docket No. 170895. Submitted March 16, 1995, at Detroit. Decided
July 7, 1995, at 9:50 A.M. Leave to appeal sought.

Two plaintiffs, Jane Doe and Nancy Roe, as next friend of Sally
Roe, a minor, using pseudonyms to protect their identity,
brought an action in the Wayne Circuit Court against Lynn
Mills, Sister Lois Mitoraj, and the Felician Sisters of O.S.F. of
Livonia, alleging the torts of invasion of privacy, based on the
public disclosure of embarrassing private facts and intrusion
upon seclusion, and intentional infliction of emotional distress.
The action was premised on the actions of Mills and Mitoraj,
who, while protesting outside the Women's Advisory Center in
Livonia, displayed the real names of Jane Doe and Sally Roe on
large signs that were held up for public view. The signs
indicated that Doe and Roe were about to undergo abortions
and implored them not to "kill their babies." The facts indi-
cated that a nonparty, Robert Thomas, had climbed into a
refuse dumpster in the parking lot of the Women's Advisory
Center and found a piece of paper indicating that Doe and Roe
were about to undergo abortions and gave this information to
Mills. The court, John R. Kirwan, J., granted summary disposi-
tion for all the defendants. The plaintiffs appealed with regard
to the order of summary disposition for Mills and Mitoraj.

The Court of Appeals *held:*

The trial court erred in dismissing the plaintiffs' claims of
public disclosure of embarrassing private facts and intentional
infliction of emotional distress, but properly granted summary
disposition with regard to the claim of intrusion upon seclusion.
The judgment must be reversed with regard to the claims of
public disclosure of private facts and intentional infliction of
emotional distress.

1. The plaintiffs presented evidence that satisfied the ele-

REFERENCES

Am Jur 2d, Constitutional Law § 602; Fright, Shock, and Mental
Disturbance §§ 2, 4; Privacy §§ 8, 38, 48-50, 100, 101, 103, 105,
106, 180, 185, 226.

See ALR Index under Abortion; Emotional Injury; Privacy; Sex and
Sexual Matters.

ments of an action for public disclosure of embarrassing private facts. Therefore, summary disposition for the defendants with regard to that claim was improper.

2. The plaintiffs' cause of action alleging public disclosure of embarrassing private facts was not based on a constitutional right of privacy, but on a right of privacy under the common law. The trial court erred in relying on cases construing the Fourth Amendment of the United States Constitution as a basis for concluding that the plaintiffs had lost their common-law privacy rights because the information concerning the plaintiffs' decisions to have an abortion had been discarded into the trash. The facts do not establish a waiver of the plaintiffs' common-law privacy rights.

3. The information disclosed by the defendants concerned an activity that took place within the private confines of the clinic, a matter that was not exposed to the public eye. The plaintiffs did not lose their privacy rights simply because the clinic is located in a public place and the plaintiffs' visits to the clinic were acts exposed to the public eye.

4. An action for intrusion upon seclusion does not exist where, as in this case, the aspect of the disclosure offensive to the plaintiffs is the fact of disclosure, not the method by which the information disclosed was obtained. Summary disposition of the claim of intrusion upon seclusion was proper because there was no allegation of an offensive intrusion, an element necessary in establishing a prima facie case of intrusion upon seclusion.

5. The fact that Mills was aware of the source of the information before publishing it is insufficient to subject her to liability under a theory of intrusion upon seclusion.

6. The trial court erred in finding that the defendants had not engaged in conduct that could be considered extreme and outrageous. The court's conclusion was influenced by the erroneous conclusion that the information disclosed did not concern a private matter because the information had been discarded into the trash and by the court's observation that there is no statute prohibiting the kind of activity engaged in by the defendants. It is not necessary that a defendant's conduct constitute a statutory violation in order for it to be found to be extreme and outrageous. The trial court erred in granting summary disposition with respect to the claim of intentional infliction of emotional distress. The question whether the defendants' conduct was sufficiently outrageous and extreme must be determined by the trier of fact.

Affirmed in part, reversed in part, and remanded.

1. TORTS — INVASION OF PRIVACY.

The tort of invasion of privacy is based on a common-law right to privacy that protects against four types of invasion of privacy: intrusion upon the plaintiff's seclusion or solitude or into the plaintiff's private affairs; public disclosure of embarrassing private facts about the plaintiff; publicity that places the plaintiff in a false light in the public eye; and appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

2. TORTS — INVASION OF PRIVACY — PUBLIC DISCLOSURE OF EMBARRASSING PRIVATE FACTS.

A cause of action for public disclosure of embarrassing private facts requires the disclosure of information that is highly offensive to a reasonable person and that is of no legitimate concern to the public; the information disclosed must concern the plaintiff's private life; liability will not be imposed for giving publicity to matters that are already of public record or otherwise open to the public.

3. PRIVACY — MEDICAL TREATMENT — SEXUAL RELATIONS.

The fact that a person engages in an activity in which the public can be said to have a general interest does not render every aspect of that person's life subject to public disclosure; matters concerning a person's medical treatment or condition generally are considered to be private; the decision to have an abortion concerns matters of sexual relations and medical treatment, both of which are regarded as private matters.

4. PRIVACY — COMMON LAW — CONSTITUTIONAL LAW.

The scope of privacy under the common law is not coextensive with a constitutional right of privacy; the constitutional right of privacy is not to be equated with the common-law right recognized by state tort law.

5. TORTS — INVASION OF PRIVACY — PUBLIC DISCLOSURE OF EMBARRASSING PRIVATE FACTS.

An action for public disclosure of embarrassing private facts is concerned with protecting a person's common-law right to be free of unreasonable or unnecessary publicity of one's private matters, not with protecting against governmental intrusions, which is the aim of the Fourth Amendment of the United States Constitution (US Const, Am IV).

6. PRIVACY — WAIVER OF RIGHT OF PRIVACY.

The right of privacy may be waived or lost by a course of conduct that estops its assertion; there can never be a waiver in the absence of knowledge and consent of the person entitled to

waive the right; an implied waiver requires a clear, unequivocal, and decisive act showing such a purpose by the party entitled to waive the right.

7. TORTS — INVASION OF PRIVACY — INTRUSION UPON SECLUSION.

An action for intrusion upon seclusion focuses on the manner in which information is obtained, not its publication, and is considered analogous to a trespass; the elements necessary to establish a prima facie case of intrusion upon seclusion are the existence of a secret and private subject matter, a right possessed by the plaintiff to keep that subject matter private, and the obtaining of information about that subject matter through some method objectionable to a reasonable person; such an action does not exist where the only aspect of the disclosure offensive to the plaintiff is the fact of disclosure, not the method by which it was obtained.

8. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; the trial court initially determines whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery, but where reasonable persons may differ, it is for the jury to determine whether the conduct has been sufficiently extreme and outrageous to result in liability.

9. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

It is not necessary that a defendant's conduct constitute a statutory violation in order for it to be found to be extreme and outrageous and thus render the defendant liable for the intentional infliction of emotional distress.

American Civil Liberties Union Fund of Michigan (by *Mark Granzotto, Paul J. Denenfeld, Elizabeth Gleicher,* and *Sharon S. Lutz*), for the plaintiffs.

*Constance E. Cumbey,* for the defendants.

Before: Jansen, P.J., and Corrigan and T. G. Kavanagh,* JJ.

Per Curiam. Plaintiffs appeal as of right from a circuit court order that granted summary disposition for defendants Lynn Mills and Sister Lois Mitoraj. We affirm in part, reverse in part, and remand.

I

Plaintiffs, using pseudonyms to protect their identity, commenced this action against defendants Lynn Mills, Sister Lois Mitoraj, and Mitoraj's religious order, The Felician Sisters of O.S.F. of Livonia, for the torts of invasion of privacy and intentional infliction of emotional distress. According to plaintiffs' complaint, defendants Mills and Mitoraj (hereinafter defendants), while protesting outside the Women's Advisory Center in Livonia, displayed the real names of plaintiffs Jane Doe and Sally Roe on "large signs" that were "held up for public view." The signs indicated that Doe and Roe were about to undergo abortions and implored them, inter alia, not to "kill their babies." Plaintiffs alleged that they did not give defendants permission to publicize the fact of their abortions. To the contrary, it was plaintiffs' intent to "keep the fact of their abortions private, confidential, and free from any publicity."

Plaintiffs alleged two different theories of invasion of privacy. Count II was labeled "public disclosure of private facts" and count III was labeled "intrusion upon seclusion." In addition, plaintiffs brought a claim for intentional infliction of emotional distress.

Defendants Mills and Mitoraj brought a motion

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

for summary disposition pursuant to MCR 2.116(C) (8) and (10).[1] The motion was supported by the affidavits of Robert Thomas, a nonparty, and defendant Mills. Thomas stated in his affidavit that he went to the Women's Advisory Center on June 1, 1991, at approximately 10:30 P.M., and climbed into a refuse dumpster that was located in the parking lot. Inside the dumpster, Thomas found a piece of paper indicating that plaintiffs Doe and Sally Roe were about to undergo abortions. Thomas gave this information to Mills the following day. Mills stated in her affidavit that she and Mitoraj went to the Women's Advisory Center on June 8, 1991, believing that Doe and Sally Roe would be arriving that day to have an abortion. Mills claimed that it was her intent to persuade both Doe and Sally Roe not to have an abortion and, therefore, she placed their names on two separate signs in order to "capture [their] attention." Mills took one sign and Mitoraj the other, and then both of them held the signs up for public view while positioned at the entrance to the Women's Advisory Center's parking lot.

In opposition to defendants' motion, plaintiffs submitted a portion of Mills' deposition testimony wherein Mills admitted that, before displaying the signs, she was aware that Thomas had obtained the information concerning plaintiffs from the garbage at the Women's Advisory Center. Plaintiffs did not submit any evidence indicating that either defendant was involved along with Thomas in obtaining the information from the garbage.

In an opinion dated November 9, 1993, the trial court granted defendants summary disposition of each of the two claims of invasion of privacy as well as the claim for intentional infliction of emotional distress. Plaintiffs appeal.

---

[1] Summary disposition previously had been granted for the Felician Sisters of O.S.F. of Livonia. That ruling has not been appealed.

II

MCR 2.116(C)(8) permits summary disposition when the "opposing party has failed to state a claim on which relief can be granted." Under MCR 2.116(C)(8), only the pleadings are examined and the court must determine whether the pleadings allege a prima facie case. *Radtke v Everett,* 442 Mich 368, 373; 501 NW2d 155 (1993); *Azzar v Primebank, FSB,* 198 Mich App 512, 516; 499 NW2d 793 (1993). All well-pleaded facts must be accepted as true. *Radtke, supra.* Only if the allegations fail to state a legal claim will summary disposition pursuant to MCR 2.116(C)(8) be proper. *Id.*

MCR 2.116(C)(10) tests the factual basis underlying a claim. Summary disposition is permitted under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." In ruling on such a motion, the court must consider the pleadings, together with any affidavits, depositions, admissions, or other evidence submitted by the parties. *Radtke, supra* at 374. The court must give the benefit of any reasonable doubt to the opposing party and may not grant the motion unless, after reviewing the pleadings and supporting documents, it is impossible for the claim to be supported at trial because of some deficiency that cannot be overcome. *Stevens v McLouth Steel Products Corp,* 433 Mich 365, 370; 446 NW2d 95 (1989).

III

Plaintiffs first argue that the trial court erred in dismissing their two claims of invasion of privacy.

The tort of invasion of privacy is based on a

common-law right to privacy, which is said to protect against four types of invasion of privacy: (1) intrusion upon the plaintiff's seclusion or solitude or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. *Tobin v Civil Service Comm,* 416 Mich 661, 672; 331 NW2d 184 (1982); *Lewis v Dayton-Hudson Corp,* 128 Mich App 165, 168; 339 NW2d 857 (1983). Only the first two types of claims are involved in this case. We find that the trial court erred in dismissing plaintiffs' claim for public disclosure of embarrassing private facts, but that summary disposition of the claim regarding intrusion upon seclusion was proper.

### A. PUBLIC DISCLOSURE OF EMBARRASSING PRIVATE FACTS

A cause of action for public disclosure of embarrassing private facts requires (1) the disclosure of information (2) that is highly offensive to a reasonable person and (3) that is of no legitimate concern to the public. *Winstead v Sweeney,* 205 Mich App 664, 668; 517 NW2d 874 (1994); *Duran v Detroit News, Inc,* 200 Mich App 622, 631; 504 NW2d 715 (1993).

Plaintiffs meet the first element of this action because they allege that defendants, while protesting in public, disclosed information publicizing their decision to have an abortion.

Regarding the second element, the trial court stated:

The words on the placards that were carried by the defendants conveyed the message that plain-

> tiffs were contemplating and or scheduling an
> abortion. This is the disclosed information. Would
> plaintiffs seriously suggest or argue that one who
> contemplates or schedules an abortion has commit-
> ted an act that is highly offensive to a reasonable
> person?

We disagree with the trial court to the extent it suggested the disclosure of the information was not actionable as a matter of law.

In analyzing a claim of invasion of privacy, courts generally have embraced the provisions of the Restatement of Torts describing that tort. See *Tobin, supra* at 672-673; *Winstead, supra* at 668, 675.

The Restatement of Torts describes the type of publicity that will give rise to an action for public disclosure of embarrassing private facts:

> The rule stated in this Section gives protection
> only against unreasonable publicity, of a kind
> highly offensive to the ordinary reasonable man.
> . . . It is only when the publicity given to him is
> such that a reasonable person would feel justified
> in feeling seriously aggrieved by it, that the cause
> of action arises. [3 Restatement Torts, 2d, § 652D,
> comment c, p 387.]

Whether a public disclosure involves "embarrass-ing private facts" has been held to be a question of fact for the jury. *Beaumont v Brown,* 401 Mich 80, 106; 257 NW2d 522 (1977); *Winstead, supra* at 673; *YG & LG v Jewish Hosp of St Louis,* 795 SW2d 488, 503 (Mo App, 1990).

Here, plaintiffs allege that defendants publicized the fact of their abortions despite their intent to keep this matter "private, confidential, and free from any publicity." Plaintiffs further allege that the publicity given by defendants was highly offen-

sive and was deliberately calculated to embarrass and humiliate them, which it allegedly did. We cannot say that a reasonable person would not be justified in feeling seriously aggrieved by such publicity. Rather, we find that plaintiffs' allegations are sufficient to constitute a question for the jury regarding whether embarrassing private facts were involved in a public disclosure.

In order to satisfy the final element of an action for public disclosure of embarrassing private facts, the information disclosed must concern the individual's private life. Liability will not be imposed for giving publicity to matters that are already of public record or otherwise open to the public. *Winstead, supra; Ledsinger v Burmeister,* 114 Mich App 12; 318 NW2d 558 (1982).

In describing those matters that will support an action for public disclosure of private facts, the Restatement of Torts states:

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters. [3 Restatement Torts, 2d, § 652D, comment b, p 386.]

The Restatement of Torts also notes that the extent of the authority to make public private facts about a public figure is not unlimited:

> There may be some intimate details of [a motion picture actress'] life, such as sexual relations, which even the actress is entitled to keep to herself. [3 Restatement Torts, 2d, § 652D, comment h, p 391.]

Matters concerning a person's medical treat-

ment or condition are also generally considered private. See, e.g., MCL 600.2157; MSA 27A.2157; *Swickard v Wayne Co Medical Examiner,* 438 Mich 536, 560; 475 NW2d 304 (1991). See also *YG & LG, supra* at 500.

In this case, the trial court observed that the subject of abortion is one of public interest and, for that reason, intimated that plaintiffs could not satisfy the final element:

> It is this court's opinion that abortion, no matter how one views this subject, is unquestionably a matter of great public concern. . . . Because abortions are so controversial in our society, events surrounding abortions do attract considerable public attention, witness the heavy picketing of abortion clinics and the extensive amount of publicity the subject of abortion receives. So, it is doubtful that plaintiffs could ever establish the third element of this cause of action because plaintiffs were involved in an event that attracts public attention.

We disagree with the trial court's reasoning.

> "The fact that [persons] engage in an activity in which the public can be said to have a general interest does not render every aspect of their lives subject to public disclosure. Most persons are connected with some activity, vocational or avocational, as to which the public can be said as a matter of law to have a legitimate interest or curiosity. To hold as a matter of law that private facts as to such persons are also within the area of legitimate public interest could indirectly expose everyone's private life to public view." [*Winstead, supra* at 674, quoting *Virgil v Time, Inc,* 527 F2d 1122, 1131 (CA 9, 1975).]

The Missouri Court of Appeals applied this principle in *YG & LG, supra.* In that case, the plaintiffs sued a television station for invasion of privacy

after the station filmed the plaintiffs' participation in a hospital's in vitro fertilization program without the plaintiffs' consent. The Missouri Court of Appeals agreed that a private matter was involved, notwithstanding the public's interest in in vitro fertilization:

> The *in vitro* program and its success may well have been matters of public interest, but the identity of the plaintiffs participating in the program was, we conclude, a private matter. It did concern matters of procreation and sexual relations as well as medical treatment—all private matters. The *in vitro* fertilization program participation was certainly not a matter of public record nor did it become of public concern due to any of the ordinary incidents of public concern. [795 SW2d at 500.]

Likewise, in this case, plaintiffs' complaint alleges a private matter. The alleged disclosure concerns the plaintiffs' decisions to have an abortion. We have no hesitancy in concluding that such an allegation involves a matter that a reasonable person would consider private. Indeed, abortion concerns matters of sexual relations and medical treatment, both of which are regarded as private matters. Furthermore, even though the abortion issue may be regarded as a matter of public interest, the plaintiffs' identities in this case were not matters of legitimate public concern, nor a matter of public record, but, instead, were purely private matters. We conclude, therefore, that plaintiffs' allegations are sufficient to meet the minimum prima facie showing necessary to establish that the information disclosed must concern a private matter.[2]

---

[2] See also *Winstead, supra,* wherein this Court concluded that a cause of action for public disclosure of embarrassing private facts may

Accordingly, we find that plaintiffs have alleged a prima facie case of public disclosure of embarrassing private facts, thereby making summary disposition for the defendants pursuant to MCR 2.116(C)(8) improper.

The trial court ruled that, even if plaintiffs had alleged a cause of action for public disclosure of embarrassing private facts, summary disposition was still warranted pursuant to MCR 2.116(C)(10), given that the undisputed facts showed that defendants had learned of each plaintiff's decision to have an abortion from a document that was obtained from the trash at the Women's Advisory Center. Relying on cases construing the scope of protection under the Fourth Amendment of the United States Constitution,[3] the trial court ruled that, because information concerning plaintiffs' decisions to have an abortion had been discarded into the trash, plaintiffs had lost their right of privacy with respect to that information.

The flaw in the trial court's analysis is that plaintiffs' action is not based on a constitutional right of privacy, but on a right of privacy under the common law. *Tobin, supra* at 672; *Beaumont, supra* at 95. As was observed by the court in *McNally v Pulitzer Publishing Co,* 532 F2d 69, 76 (CA 8, 1976), "[t]he constitutional right of privacy is not to be equated with the common law right recognized by state tort law."

Along these same lines, the United States Supreme Court in *Katz v United States,* 389 US 347, 350-351; 88 S Ct 507; 19 L Ed 2d 576 (1967), stated:

exist where a newspaper published intimate details about the plaintiff's private life, including the fact that she had several abortions.

[3] See *California v Greenwood,* 486 US 35, 40; 108 S Ct 1625; 100 L Ed 2d 30 (1988) (holding that, for purposes of federal constitutional law, a person does not possess a reasonable expectation of privacy with respect to trash discarded outside the home). See also *People v Whotte,* 113 Mich App 12, 20-21; 317 NW2d 266 (1982).

[T]he Fourth Amendment cannot be translated into a general constitutional "right of privacy." That Amendment protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all. Other provisions of the Constitution protect personal privacy from other forms of governmental invasion. But the protection of a person's general right to privacy— his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States.

Courts from this state have likewise recognized that the scope of privacy under the common law is not coextensive with a constitutional right to privacy. *Swickard, supra* at 547, 556; *Tobin, supra* at 671-677; *Beaumont, supra* at 95.

Furthermore, while the aim of the Fourth Amendment is to provide "protect[ion of] individual privacy against certain kinds of governmental intrusion," *Katz, supra* at 350, an action for public disclosure of embarrassing private facts is concerned, not with governmental intrusions, but with protecting a person's common-law right to be free of unreasonable or unnecessary publicity of one's private matters, *Beaumont, supra* at 104-105.

We conclude, therefore, that the trial court erred in relying on cases construing the Fourth Amendment as a basis for concluding that plaintiffs had somehow lost their common-law privacy rights.

Although it is possible for the right of privacy to be waived or lost by a course of conduct that estops its assertion, *Earp v Detroit,* 16 Mich App 271, 278, n 5; 167 NW2d 841 (1969), the facts of this case do not establish any waiver. It has been said that " '[t]here can never be a waiver of the right of privacy, in the absence of knowledge and

consent of the person entitled to waive.' " *Id.,* quoting 77 CJS, Right of Privacy, § 6, p 414. Moreover, an implied waiver requires a "clear, unequivocal, and decisive act of the party showing such a purpose." 62A Am Jur 2d, Privacy, § 226, p 836.

According to the undisputed facts in this case, a nonparty learned of plaintiffs' decisions to have an abortion from a document that had been discarded into the trash. There is no evidence that either plaintiff personally discarded the document or had knowledge that the document was discarded. Moreover, even if plaintiffs had discarded the document, such an act does not demonstrate consent to having information in that document publicly disclosed. Therefore, the facts do not establish a waiver of plaintiffs' common-law privacy rights.

Defendants also maintain that the undisputed facts show that they did not give publicity to a private matter because the Women's Advisory Center is located in a public place and plaintiffs' "comings and goings to the clinic were acts exposed to the public eye." The information disclosed, however, concerned an activity that took place within the private confines of the clinic, a matter which was not "exposed to the public eye." Also, merely because plaintiffs' "comings and goings" may have been visible to members of the public does not mean that the public was aware of the precise purpose of those "comings and goings." Moreover, we agree with the court in *YG & LG, supra,* which held, in a similar context, that the plaintiffs there did not lose their privacy rights with respect to their participation in an in vitro fertilization program merely because they attended the program at a public hospital. The court noted:

By so attending this limited gathering, [the

plaintiffs] did not waive their right to keep their condition and the process of *in vitro* private, in respect to the general public.

\* \* \*

In addition, we cannot hold that attendance at the gathering constituted an appearance in a public place so as to subject appellants to publicity. [795 SW2d at 502-503.]

Therefore, for the reasons stated, we reverse the trial court's judgment granting the defendants' motion for summary disposition of plaintiffs' claim for public disclosure of embarrassing private facts.

### B. INTRUSION UPON SECLUSION

An action for intrusion upon seclusion focuses on the manner in which information is obtained, not its publication; it is considered analogous to a trespass. *Tobin, supra* at 673-674; *Lewis, supra* at 168. There are three necessary elements to establish a prima facie case of intrusion upon seclusion: (1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man. *Tobin, supra* at 672.

In this case, the alleged wrongful actions that form the basis of plaintiffs' claim of intrusion relate only to the publication of information, not to any wrongful intrusion. Specifically, plaintiffs' complaint alleges:

Defendants intentionally intruded upon the private affairs of the Plaintiffs by *publicizing* the fact that Jane Doe and Sally Roe intended to undergo abortions. [Emphasis added.]

In *Tobin,* our Supreme Court noted that an action

for intrusion does not exist where "[t]he only aspect of the contemplated disclosure offensive to the plaintiffs is the fact of disclosure, not the method by which it was obtained." *Tobin, supra* at 674. That is exactly the situation in this case. Therefore, because plaintiffs' complaint alleges only the fact of disclosure and does not allege any offensive intrusion, we conclude that summary disposition of plaintiffs' intrusion claim was proper pursuant to MCR 2.116(C)(8).

Although not specifically alleged, plaintiffs argue that a cause of action for intrusion exists because the evidence shows that the information about plaintiffs was obtained from a garbage dumpster at the Women's Advisory Center.[4] The trial court rejected this argument, however, noting that, even if the search of the garbage could be considered a wrongful intrusion, the undisputed facts showed that the search was conducted by Robert Thomas, a nonparty, and there was no evidence showing that either defendant was involved along with Thomas in obtaining the information from the garbage.

Plaintiffs insist, however, that liability still may be imposed under an intrusion theory because defendant Mills admitted in her deposition that she was aware of the source of the information before publicizing it. We disagree.

In *Pearson v Dodd,* 133 US App DC 279; 410 F2d 701 (1969), Dodd brought an action for invasion of privacy after two former employees removed some confidential files from Dodd's office and turned them over to Pearson and Anderson, who later published the information. The court rejected

---

[4] Where a motion is brought pursuant to MCR 2.116(C)(8) or (10), MCR 2.116(I)(5) provides that "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."

Dodd's claim that liability could be imposed on Pearson and Anderson under an intrusion theory of invasion of privacy, even if they were aware at the time of publication that the information had been obtained by improper means. The court stated:

> The question then becomes whether appellants Pearson and Anderson improperly intruded into the protected sphere of privacy of appellee Dodd in obtaining the information on which their columns were based. In determining this question, we may assume, without deciding, that appellee's employees and former employees did commit such an improper intrusion when they removed confidential files with the intent to show them to unauthorized outsiders.
>
> Although appellee's complaint charges that appellants aided and abetted in the removal of the documents, the undisputed facts, narrowed by the District Judge with the concurrence of counsel, established only that appellants received copies of the documents knowing that they had been removed without authorization. If we were to hold appellants liable for invasion of privacy on these facts, we would establish the proposition that one who receives information from an intruder, knowing it has been obtained by improper intrusion, is guilty of a tort. . . .
>
> Of course, appellants did more than receive and peruse the copies of the documents taken from appellee's files; they published excerpts from them in the national press. But in analyzing a claimed breach of privacy, injuries from intrusion and injuries from publication should be kept clearly separate. [*Id.* at 282-283.]

This rationale is directly applicable to the instant case and persuades us that Mills' mere receipt of the information from Thomas, even with knowledge of its source, is insufficient to subject her to liability under an intrusion theory.

Accordingly, we conclude that summary disposition of plaintiffs' claim of intrusion upon seclusion was proper.

IV

Plaintiffs next argue that the trial court erred in dismissing their claim of intentional infliction of emotional distress. The elements of this tort are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Linebaugh v Sheraton Michigan Corp,* 198 Mich App 335, 342; 497 NW2d 585 (1993).

The trial court ruled that, while plaintiffs sufficiently had alleged a cause of action for intentional infliction of emotional distress, summary disposition was justified pursuant to MCR 2.116(C)(10), because the facts before the court failed to demonstrate that defendants engaged in conduct that could be considered extreme and outrageous. We disagree.

Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Linebaugh, supra.* Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* It has been said that the case is generally one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 603; 374 NW2d 905 (1985).

In reviewing such a claim, it is initially for the court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery. *Sawabini v Desenberg*, 143 Mich App 373, 383; 372 NW2d 559 (1985). However, "[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." 1 Restatement Torts, 2d, § 46, comment h, p 77. See also *Linebaugh, supra* at 342-343 (whether conduct is sufficiently outrageous and extreme to render one liable for the intentional infliction of emotional distress is a matter for determination by the trier of fact).

The conduct in this case involved defendants identifying plaintiffs by name and publicizing the fact of their abortions by displaying such information on large signs that were held up for public view. In ruling that defendants' conduct was not sufficiently extreme and outrageous so as to permit recovery, the trial court was influenced in part by its conclusion that the information disclosed did not concern a private matter, inasmuch as it was obtained from a document that had been discarded into the trash. As we discussed previously, however, the trial court erred in reaching this conclusion. The trial court also observed that defendants have a constitutional right to "protest peaceably against abortion." However, the objectionable aspect of defendants' conduct does not relate to their views on abortion or their right to express those views, but, rather, to the fact that defendants gave unreasonable or unnecessary publicity to purely private matters involving plaintiffs. Finally, the trial court observed that there is no statute prohibiting the kind of activity engaged in by defen-

dants. It is not necessary, however, that a defendant's conduct constitute a statutory violation in order for it to be found extreme and outrageous.

We are of the opinion that the trial court erred in granting the defendants' motion for summary disposition of plaintiffs' claim of intentional infliction of emotional distress. Defendants' conduct involved more than mere insults, indignities, threats, annoyances, or petty oppressions. We believe this is the type of case that might cause an average member of the community, upon learning of defendants' conduct, to exclaim, "Outrageous!" Because reasonable men may differ with regard to whether defendants' conduct may be considered sufficiently outrageous and extreme so as to subject them to liability for intentional infliction of emotional distress, this matter should be determined by the trier of fact.

Accordingly, we reverse the trial court's decision granting the defendants' motion for summary disposition of plaintiffs' claim of intentional infliction of emotional distress.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.