*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD LANDFAIR,

Plaintiff-Appellant,

v

CATHOLIC DIOCESE OF LANSING, LANSING
CATHOLIC HIGH SCHOOL, DOUGLAS MOORE,
and BISHOP EARL BOYEA,

Defendants-Appellees.

UNPUBLISHED
February 10, 2022

No. 355587
Ingham Circuit Court
LC No. 19-000299-CD

Before: BORRELLO, P.J., and M. J. KELLY and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants. We affirm.

## I. FACTUAL BACKGROUND

On the morning of October 9, 2017, while employed by defendant the Catholic Diocese of Lansing (the Diocese) as the Director of Multicultural Ministry, and also employed by defendant Lansing Catholic High School as the boys' varsity tennis team coach, plaintiff emerged from his shower and sent a text message to CM, one of the co-captains of his tennis team. In the message, plaintiff asked CM to bring "a pair of shoes belonging to another player" to that day's practice. A short while later, plaintiff picked up his cellular phone to check for a response from CM, and in doing so, he accidentally sent a nude photograph of himself to CM via text message. Plaintiff then attempted to call and text CM to explain that he sent the photograph accidentally. One of plaintiff's text message stated:

> [CM]!! Delete and disregard the prior pic!! I took it accidentally after getting out of the shower and texting you about the players shoes. Again, please delete and ignore!!! a complete accident!

Plaintiff followed that message with another asking, "Please acknowledge!!" Plaintiff received no response from CM, and so hoped to speak with him before that afternoon's tennis practice.

-1-

At approximately 3:00 p.m. the same day, plaintiff received a phone call from the Diocese's human resources director, Lisa Kutas, who informed plaintiff that he was being placed on administrative leave and should avoid coming to his office. On October 11, 2017, plaintiff met with a Lansing Police Detective and explained how he accidentally sent the photograph, and surrendered his cellular phone to the officer for further investigation. On October 12, 2017, plaintiff received a conference telephone call from his supervisor and Kutas, and the supervisor informed plaintiff that he "had 24 hours to either resign or be terminated."

On the morning of October 13, 2017, plaintiff met with defendant Bishop Earl Boyea who granted plaintiff's request to take until October 16, 2017, to make his decision. On the afternoon of the same day, plaintiff received a telephone call from the police detective with whom he had earlier met, who informed him that "no charges would be pursued against" him. Later, plaintiff contacted Kutas and during their discussion learned that he was eligible to retire. Plaintiff informed Kutas that he would retire from the Diocese effective October 16, 2017.

On October 16, 2017, the Diocese's "Safe Environment Coordinator" for its Department of Human Resources sent an e-mail to "Lansing Catholic High School Parents" stating that the Diocese had become aware "of some unprofessional and inappropriate texts from an adult to a student," and asked the recipients to inform the Diocese upon discovering anything inappropriate or unprofessional in their children's texts, e-mails, and social media accounts. The e-mail did not identify or mention plaintiff by name. On October 17, 2017, the school's athletic director, Brian Wolcott, sent plaintiff an e-mail stating that the school would not be bringing back plaintiff as a tennis coach for the remainder of the tennis season and that plaintiff's contract would not be renewed. Wolcott also noted that plaintiff said in an earlier conversation that he intended to retire and would send written notification to Wolcott regarding that decision.

On April 23, 2018, plaintiff "stopped by" the school's tennis courts, and there encountered a former student who asked plaintiff why he was there and remarked that she thought that plaintiff was banned from the campus. On April 25, 2018, Wolcott sent plaintiff a text message and "request[ed] that [plaintiff] not come to Lansing Catholic or matches/games when students are around as it makes our student athletes uncomfortable." On April 26, 2018, the school's principal sent an e-mail that provided, in relevant part, as follows:

Dear Tennis Parents,

On Monday evening our former tennis coach, [plaintiff], showed up at tennis practice. For those who may be unaware [plaintiff] was let go after an incident which we deemed inappropriate. Several of the varsity girls players did the right thing and alerted me that he was present and when I went out to the courts [plaintiff] had already left. The tennis captains also informed us that he had been to at least one JV practice this year of which we were unaware.

Mr. Wolcott contacted [plaintiff] to let him know that he was not to interact with students nor be on school grounds, attend any tennis games or matches, home or away. This is for boys and girls tennis at all levels. [Plaintiff] said he understood and will abide by that. Mr. Wolcott notified tennis coaches of this as well.

We want to commend the girls for speaking up. We want all of our students when they see something that makes them uncomfortable or they believe is wrong to say something so as adults we can investigate and take action. If [plaintiff] shows up or interacts with students, please notify us immediately.

The safety of our students is important to us. We are taking these steps and notifying you so that these are more than just words.

During April 2019, plaintiff sued defendants for defamation and intentional infliction of emotional distress. Defendants moved for summary disposition. The trial court granted the motion in part by dismissing plaintiff's defamation claim, and permitted plaintiff to file an amended complaint. Plaintiff's amended complaint alleged counts of "invasion of privacy false light," and "negligent or intentional infliction of emotional distress." Defendants moved for summary disposition which the trial court granted and dismissed plaintiff's claims. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865 NW2d 915 (2014). "When evaluating a motion for summary disposition under MCR 2.116(C)(10), 'a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.'" *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016), quoting *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

## III. ANALYSIS

### A. FALSE-LIGHT INVASION OF PRIVACY

Plaintiff argues that the trial court erred by dismissing his claim of false-light invasion of privacy. We disagree.

The tort of invasion of privacy is based on a common-law right to privacy, which is said to protect against four types of invasion of privacy: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. [*Doe v Mills*, 212 Mich App 73, 79-80; 536 NW2d 824 (1995) (citations omitted).]

"In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information

-3-

that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 69; 919 NW2d 439 (2018) (quotation marks and citation omitted). "Further, the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Id.* (quotation marks and citation omitted). A plaintiff claiming false-light invasion of privacy must prove that the defendant acted with malice. *Foundation for Behavioral Resources v W E Upjohn Unemployment Trustee Corp*, 332 Mich App 406, 411; 957 NW2d 352 (2020).

In this case, plaintiff initially argued that the April 26, 2018 e-mail inaccurately stated that plaintiff had been "let go" and otherwise suggested that defendants fired plaintiff for committing inappropriate acts that involved a student. He argued in response to defendants' second motion for summary disposition that the October 16, 2017 e-mail inaccurately stated that multiple text messages were sent to CM and that the April 26, 2018 e-mail inaccurately stated that plaintiff had been "let go" from his employment even though plaintiff retired. During the hearing on the second motion for summary disposition, the trial court concluded that the October 16, 2017 e-mail's usage of the term "inappropriate texts" accurately described the situation because no dispute existed that it was inappropriate for a student to receive a nude photograph of plaintiff, and because the school reasonably used the plural "texts" at a time when it "didn't know if there were other texts out there or not." The trial court further opined that nothing in the April 26, 2018 e-mail, including use of the phrase "let go," was "highly objectionable." The trial court ruled that the use of "let go" did not "show any recklessness on the part of either Defendant," and that "it wasn't a false matter of interpretation" and thus did not place plaintiff "in a false light." The court explained that no false implication had been made because defendants "forced the hand of the Plaintiff to leave," given the "unrefuted fact" that plaintiff "faced the choice of forced retirement or termination." The trial court, therefore, ruled that no genuine issue of material fact existed regarding the false-light invasion of privacy claim.

Plaintiff argues that the trial court erred in four ways by dismissing that claim. First, plaintiff contends that the trial court erred because a question of fact existed regarding whether defendants inaccurately used the plural term "texts" in the October 16, 2017 e-mail because he asserts that no evidence established that plaintiff sent multiple text messages to a student. Plaintiff's contention lacks merit because he fails to address the substance of the trial court's analysis that the use of the plural "texts" was not false because defendants were unaware at that time whether other text messages were sent. Plaintiff has failed to show any error in the trial court's ruling. Further, plaintiff's contention is also negated by the record evidence which actually established that plaintiff sent multiple unprofessional and inappropriate text messages to a student.

Plaintiff admits that he sent a nude photo of himself to a student and then followed up by attempting "to call and text the student" to "explain that it was a sheer accident, to apologize profusely and to beg that the accidental photo be deleted, ignored and disregarded." Plaintiff sent a text message to CM stating, "Delete and disregard the prior pic!! I took it accidentally . . . ." Plaintiff admitted that he then sent yet another text message to CM saying, "Please acknowledge!!" which drew no response. The record indicates that plaintiff sent at least three inappropriate and unprofessional text messages to CM: one containing a nude photo of himself, one instructing CM to delete, ignore, and disregard the photograph, and one asking CM to acknowledge plaintiff's previous message. Defendants' use of the plural "texts" accurately reported the situation.

Defendants reasonably interpreted plaintiff's sending of a nude photograph of himself to a student, whether intentional or accidental, as unprofessional and inappropriate conduct. The follow-up request that the student delete and ignore the nude photo also qualified as unprofessional and inappropriate conduct because plaintiff represented a person in a position of authority over a student requesting that the student not report the situation to school authorities. Based upon the record, the trial court could reasonably conclude that the series of messages plaintiff texted CM were unprofessional and inappropriate and that plaintiff could not establish any inaccuracy, and certainly not the falsity of the use of the term "texts" in the October 16, 2017 e-mail, nor otherwise establish that use of the accurate term placed him in a false position. Unrefuted evidence established that plaintiff sent at least three inappropriate and unprofessional text messages to a student. Accordingly, the trial court did not err and plaintiff has failed to establish the existence of a genuine issue of material fact in this regard.

Second, plaintiff asserts that a question of fact existed regarding the use of the phrase "let go" in the April 26, 2018 e-mail. Plaintiff, however, again fails directly to address the trial court's ruling regarding the accuracy of the usage of that phrase because plaintiff retired after he faced termination for his unprofessional and inappropriate conduct. Thus, plaintiff has failed to show the error of the trial court's ruling. Moreover, the record reflects that evidence supported the trial court's ruling. The Diocese employed plaintiff as the Director of Multicultural Ministry, and the Lansing Catholic High School employed him as a varsity tennis coach. The nude photo incident occurred on October 9, 2017, and on October 12, 2017, plaintiff's supervisor informed plaintiff that he "had 24 hours to either resign or be terminated," after which plaintiff informed the Diocese's human resources director that he would retire on October 16, 2017, and the human resources director confirmed the retirement date from the Diocese by letter.

On October 17, 2017, Lansing Catholic High School Athletic Director Wolcott followed up on a conversation with plaintiff by sending plaintiff an e-mail to "clarify" that the high school would neither retain plaintiff as its tennis coach for what remained of the season nor renew his contract at the end of it. After an incident in April 2018, in which plaintiff visited the school's tennis courts, Wolcott sent a text message to plaintiff asking that he "not come to Lansing Catholic or matches/games when students are around." On April 26, 2018, the school's principal authored an e-mail sent to the school's "Tennis Parents," which included the statement that "[o]n Monday evening our former tennis coach, [plaintiff], showed up at tennis practice. For those who may be unaware [plaintiff] was let go after an incident which we deemed inappropriate." Given this undisputed evidence, the high school administration accurately used the term "let go." Plaintiff retired from his employment with the Diocese effective October 16, 2017, and later informed Wolcott that he would be retiring as a tennis coach for Lansing Catholic High School. Wolcott then informed plaintiff that he was immediately relieved, i.e., let go, of further responsibilities as tennis coach.

Therefore, in addition to the trial court's reasoning that plaintiff was "let go" in the sense that plaintiff had been forced to resign or be terminated, Wolcott's e-mail establishes that the high school separately decided to terminate plaintiff's coaching contract. The later use of the term "let go" accurately described the circumstances of his removal from his coaching position. Plaintiff cannot show that the trial court erred by dismissing the claim of false-light invasion of privacy to the extent that the claim relies upon the April 26, 2018 e-mail because plaintiff cannot establish the falsity of any portion of that e-mail.

-5-

Third, plaintiff contends that the evidence regarding defendants' conduct would permit a jury to conclude that defendants acted with malice by ignoring or recklessly disregarding the truth. But plaintiff has not identified any evidence that supported his contention. To prove malice, a plaintiff must show that a defendant knew or acted in reckless disregard concerning the falsity of the matter. *Puetz*, 324 Mich App at 69. Plaintiff has failed to meet this burden in connection with defendants' statements. While plaintiff asserts statements that inappropriate text messages were sent to a student, and that plaintiff was "let go" from his coaching position, showed malice, those statements were reasonable interpretations of the underlying events because evidence established that plaintiff sent multiple text messages to CM, and established that Lansing Catholic High School ended plaintiff's coaching contract and decided to not renew it irrespective of plaintiff's decision to retire.

Fourth, plaintiff argues that defendants' conduct resulted in his effective banishment from his community and forced him to suffer ridicule. Plaintiff's argument regarding the purported effects of defendants' conduct does not address whether the trial court properly ruled that plaintiff could not establish the elements of his claim of false-light invasion of privacy. Nor does it otherwise establish that the trial court ruled erroneously. Plaintiff's argument, therefore, fails to establish any right to relief.

## B.  INFLICTION OF EMOTIONAL DISTRESS

Plaintiff argues that the trial court erred by dismissing Count II of his amended complaint which alleged negligent or intentional infliction of emotional distress. We disagree.

"Michigan has recognized a cause of action based on negligence in a parent who witnesses the negligent infliction of injury to his or her child and suffers emotional distress as a consequence." *Wargelin v Sisters of Mercy Health Corp*, 149 Mich App 75, 80; 385 NW2d 732 (1986) (citations omitted). Four elements must be established to recover under a claim for negligent infliction of emotional distress:

> (1) the injury threatened or inflicted on the third person must be a serious one, of a nature to cause severe mental disturbance to the plaintiff; (2) the shock must result in actual physical harm; (3) the plaintiff must be a member of the immediate family, or at least a parent, child, husband or wife; and (4) the plaintiff must actually be present at the time of the accident or at least suffer shock fairly contemporaneous with the accident. [*Id.* (quotation marks and citations omitted).]

"To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Walsh v Taylor*, 263 Mich App 618, 634; 689 NW2d 506 (2004) (citation omitted). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. (quotation marks and citations omitted). "Initially, the trial court must determine whether a defendant's conduct qualifies as so extreme and outrageous as to permit recovery for intentional infliction of emotional distress." *Dalley v Dykema Gossett*, 287 Mich App 296, 321; 788 NW2d 679 (2010). "But where reasonable

individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004). "The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citations omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v Mills*, 212 Mich App at 91.

When defendants moved for summary disposition of the claims in the amended complaint, plaintiff's response to that motion did not address his emotional-distress claim. During the hearing on that motion, the trial court asked plaintiff's counsel if there was "[a]nything else" because plaintiff "didn't file a response on the second issue." The court reiterated, "[f]or the intentional emotional distress, you're letting that go? There wasn't any response?" Plaintiff's counsel responded, "No, Your honor. The elements that we plead[ed] in our complaint, there is no evidence that leads to a factual question."

At the close of the hearing, the trial court ruled that no evidence established that defendants' conduct had been extreme and outrageous, explaining that the court "tacitly [was] saying that it feels the School [had] a duty by the parents to find if something inappropriate [had] happened so they can check their children's phones." The trial court further held that the April 26, 2018 e-mail was neither extreme nor outrageous because defendants' conduct was not intentional or reckless, and no evidence established that the principal's e-mail caused any emotional distress. The trial court, therefore, concluded that "these two correspondences" were not outrageous.

Plaintiff argues, in a cursory fashion, that the trial court erred because he suffered from banishment and ridicule. Plaintiff's argument is unavailing.

To the extent that plaintiff raised a claim of negligent infliction of emotional distress, he has failed to provide any briefing, including binding legal authority, in support of that claim. Trial courts "are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute." *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008). "If a party fails to adequately brief a position, or support a claim with authority, it is abandoned." *MOSES, Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006). The record reflects that plaintiff abandoned that claim.

Further, plaintiff's argument on appeal in response to the trial court holding that defendants' written communications regarding plaintiff were not extreme and outrageous consists of a single sentence asserting that he suffered from banishment and ridicule. Plaintiff's description of the purported effect of defendants' actions fails to address or establish that defendants' actions were extreme and outrageous. Again, a party's failure to adequately brief a position results in the abandonment of that position. *MOSES, Inc*, 270 Mich App at 417. Therefore, plaintiff has abandoned this argument.

Even assuming that plaintiff's argument is implicitly tied to defendants' communications regarding plaintiff, we agree with the trial court that nothing contained within those e-mails was extreme and outrageous. The October 16, 2017 e-mail stated that an unnamed adult sent

unprofessional and inappropriate text messages to a student, and the April 26, 2018 e-mail stated that plaintiff had been "let go" as a tennis coach and asked to not return to the campus. Nothing in either e-mail could be deemed so outrageous that it went beyond all reasonable bounds of decency. Plaintiff, therefore, has failed to establish that the trial court erred by dismissing his claim of negligent or intentional infliction of emotional distress.

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ James Robert Redford