*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL S. STONE,

Plaintiff-Appellant,

UNPUBLISHED
March 23, 2023

v

MICHELLE WOLF,

Defendant-Appellee.

No. 361431
Washtenaw Circuit Court
LC No. 22-000193-CZ

Before: GLEICHER, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Plaintiff Michael Stone consulted defendant Michelle Wolf, a licensed psychologist, for several months in 2017. During divorce proceedings in 2019, Stone signed an authorization allowing Dr. Wolf to disclose "all written records and verbal information pertaining to [Stone]" to a different psychologist, Dr. Richard L. Rickman. Three years later, Stone brought this lawsuit against Dr. Wolf asserting a claim for intentional infliction of emotional distress.

Dr. Wolf moved for summary disposition contending that the statute of limitations had run and that Stone's complaint failed to describe an actionable intentional infliction of emotional distress claim. The trial court granted the motion, and we affirm.

## I. FACTUAL BACKGROUND: STONE'S ALLEGATIONS

Wolf's motion for summary disposition was brought under MCR 2.116(C)(7) and (C)(8). Accordingly, we accept the allegations contained in Stone's complaint as true and construe them in Stone's favor. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019); *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010).

Stone's incorrectly labeled "Verified Counter-Complaint" asserts that he "entered into a therapeutic relationship" with Dr. Wolf focused on problems involving his relationship with his son and wife. Dr. Wolf requested that Stone's wife participate in some of the sessions. Count I of the two-count complaint details the factual basis for Stone's intentional infliction of emotional distress claim. It encompasses 49 separate paragraphs. Here is a representative sample of the allegations supporting Stone's claim:

F. That the Defendant has committed willful neglect of her duty, as his therapist, that she owed to the Plaintiff by her actions.

G. That the Defendant did not facilitate the Plaintiff's relationship with his wife and his children and, in fact, his relationship deteriorated with them as a result of her behavior.

H. That the Defendant showed no empathy towards the Plaintiff and the suffering that he was experiencing with his interactions with his wife and his children.

* * *

J. That the Defendant did not perform her duties regarding her occupation according to the Ethical Principles of Psychologists and Code of Conduct, which supports the Plaintiff's allegations that her behavior was outrageous and reckless.

* * *

N. That the Defendant, in the therapeutic relationship must establish trust with whom they work, which clearly was not done with the Plaintiff; in fact, the Defendant betrayed the trust that he had in her.

* * *

P. That during the first session where the Plaintiff's wife, who was invited to solely answer questions, the Defendant yelled at the Plaintiff "No, no, no, we don't give a shit what you think right now."

Q. That this type of behavior, which was common, did not foster an open, trusting, therapeutic relationship between the Plaintiff and the Defendant.

* * *

S. That the Defendant is obligated to maximize benefits and minimize harm to their patient and the Defendant needed to seriously consider the need for, the possible consequences of, and her responsibility to correct any resulting mistrust or other harmful effects that arise from her adversarial approach in this matter.

* * *

U. That the Defendant had an obligation to ensure that her potential and obvious bias, the boundaries of her competence, and the limitations of her expertise, did not result in unjust practices regarding the Plaintiff, which she did not.

* * *

FF.  That the Defendant did not develop a plan which would positively affect the Plaintiff and she must avoid acts or omissions which could reasonably be foreseen to injure or harm other people, which she did not do and she, in fact, severely harmed the Plaintiff with her behavior.

GG.  That the Defendant stated to the Plaintiff that, "what you are doing is, it's actually detrimental to your relationship with people that you can't stop and regroup" and offered no therapeutic help to address that issue, but instead, demanded his wife get him out of the house, which caused more harm to the Plaintiff.

\* \* \*

II.  That the Defendant knew of the Plaintiff's preexisting psychosomatic conditions that were disclosed by the Plaintiff during the previous therapy sessions, anxiety, severe periodic chest pains, depression, irritability, due to stress. Additionally, the Defendant knew that the Plaintiff was unemployed at the time therapy sessions began.

JJ.  That the Defendant inappropriately diagnosed the Plaintiff as suffering from "Borderline Personality Disorder", which she had not disclosed to the Plaintiff, and then told his wife, clearly without permission or consent from the Plaintiff; his wife, then proceeded to use it against the Plaintiff under the Defendant's direction.

\* \* \*

MM.  That the Defendant knew or had to have known, as a therapist, that the Plaintiff was vulnerable and susceptible, and her behavior took advantage of her position and his vulnerability and susceptibility.

\* \* \*

OO.  That the Defendant was clearly in a position of authority regarding the Plaintiff, and she took advantage of that position to harm the Plaintiff and she should be held to a higher standard than the lay person in light of her having a PHD in Psychology, and holds herself out as an expert regarding trauma and PTSD, which was undisclosed to the Plaintiff when the therapy sessions began and never disclosed throughout the therapy sessions; the Defendant actually inflicted trauma against the Plaintiff by her actions. Defendant did hold herself out as a Christian psychologist, which is why he selected her and had more trust in her, which was clearly betrayed by her behavior.

In paragraph PP (the 41st paragraph), the complaint introduces Dr. Rickman, who performed "a psychological evaluation" of Stone in May 2019, during Stone's divorce proceedings.  Dr. Rickman sought to consult with Dr. Wolf.  Stone signed an "authorization for release of information" permitting Dr. Wolf to speak with Dr. Rickman.  The authorization consists

of two short paragraphs. It allowed Dr. Wolf to provide Dr. Rickman with "all written records and verbal information" regarding Stone "that may be communicated . . . via mail, FAX, e-mail, face-to-face contact or over the telephone." The release specifically authorized Dr. Wolf to share with Dr. Rickman "[a]ny . . . information relevant to an individuals [sic] emotional, intellectual, or behavioral abilities and attributes."

According to the complaint, Dr. Wolf disclosed to Dr. Rickman that Stone "suffered from major depression, rigid thinking, did not recognize appropriate boundaries with the family, had problems controlling his emotions, suffered from irritability and impulsivity, which is not supported by the evidence." The complaint further alleges:

> QQ. That the Defendant disclosed to Dr. Rickman that the Plaintiff's wife and children were afraid of him, which is not supported by the evidence;
>
> RR. That the Defendant disclosed to Dr. Rickman that over the past year she realized that the Plaintiff was emotionally abusing his wife and children, which is not supported by any evidence.
>
> SS. That the Defendant disclosed to Dr. Rickman that the Plaintiff lacked ability to take responsibility for his weakness and blames everyone else for the problems in his life, which is not supported by any evidence.
>
> TT. That the Defendant disclosed to Dr. Rickman that the Plaintiff was increasingly more prone to physical, rageful outbursts, and that he was more volatile outside of the therapy sessions, which is not supported by any evidence.
>
> UU. That the Defendant disclosed to Dr. Rickman that the Plaintiff needed more emotional regulation, which is not supported by the evidence.
>
> VV. That the Defendant disclosed to Dr. Rickman that she was concerned that everyone was protected, which is not supported by any evidence.
>
> WW. That the Defendant's disclosures to Dr. Rickman resulted in extreme damage to his marriage and custody of the parties' minor child.

Count II of the complaint is a claim for "exemplary damages."

## II. PROCEDURAL BACKGROUND

Dr. Wolf's motion for summary disposition raised two arguments: the three-year statute of limitations ran before Stone filed his complaint, and the actions he described did "not rise to the level of intentional infliction of emotional distress, under Michigan law." Stone's responsive brief recapitulated most of the allegations in this complaint. Regarding Dr. Wolf's disclosures to Dr. Rickman, the brief asserts, "If he signed a release to allow her to talk to Dr. Rickman, it was certainly not intended to allow her to say specific conclusions and diagnosis that he had never talked to her about in any sessions." Stone argued that although the applicable statute of limitations was three years, "[c]laims do accrue when the wrong was done. The statute is triggered at the time of the wrong. The wrong last occurred on June 18, 2019, where the Defendant is quoted and

-4-

provided documentation to Dr. Rickman[.]" Dr. Wolf's communications, Stone added, "were not true, were truly outrageous, intentional and were intended to harm the Plaintiff's custody and parenting time with his minor child."

In a reply brief, Dr. Wolf's counsel added a new argument: that Stone's claim actually sounded in medical malpractice and was an attempted " 'end around' the malpractice statute of limitations and the malpractice procedural requirements."

At the summary disposition hearing, counsel for Stone renounced the first 40 paragraphs of the complaint, declaring "this case is not about the sessions with Dr. Wolf in 2017," but concerned only the disclosures made to Dr. Rickman in 2019. The release Stone signed did not "allow" the disclosures, counsel argued, because "they weren't ever part of the therapy session." The circuit court was unpersuaded, finding that Stone's allegations of outrageousness did not satisfy the standard for that tort. Stone now appeals.

## III. ANALYSIS

Stone properly concedes that the statute of limitations governing most of his factual claims has expired. His consultation with Dr. Wolf occurred in 2017; he filed this case in 2022. Even were we to construe the complaint as sounding in intentional infliction of emotional distress rather than professional malpractice, it is time barred.[1]

Intentional infliction of emotional distress is governed by the three-year statute of limitations that applies to tort claims, MCL 600.5805(10). "Claims of intentional infliction of emotional distress must be brought within three years after they accrue in order to avoid the limitation bar." *Nelson v Ho*, 222 Mich App 74, 85; 564 NW2d 482 (1997). The majority of Stone's factual allegations involve wrongs committed in 2017. The statute of limitations for an intentional infliction of emotional distress claim based on those allegations expired in 2020. Accordingly, summary disposition was properly granted under MCR 2.116(C)(7) with respect to those claims.

Stone's claims involving Dr. Rickman were brought within three years of Dr. Stone's communication with Dr. Rickman, and are not necessarily time-barred. But they fail for a different reason. The circuit court correctly ruled that substantively, Dr. Wolf's communications with Dr. Rickman were not outrageous or extreme, falling far short of the standard required to support an intentional infliction of emotional distress claim. We additionally hold that Stone waived any claim regarding Dr. Wolf's statements to Dr. Rickman by signing the authorization.

---

[1] Dr. Wolf's reply brief cites *Lucas v Awaad*, 299 Mich App 345; 830 NW2d 141 (2013), in support of her argument that Stone's complaint sounds in professional negligence and is therefore subject to a two-year statute of limitations. We tend to agree with this argument, but do not rely on it to decide this case because it was raised in a reply brief. "Reply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief." *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007), citing MCR 7.212(G).

"To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citation omitted). To succeed on such a claim the plaintiff must "demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 603; 374 NW2d 905 (1985) (quotation marks and citation omitted).

The context of an allegedly extreme and outrageous statement also figures into the analysis. *Margita v Diamond Mtg Corp*, 159 Mich App 181, 189; 406 NW2d 268 (1987). Here, the statements at issue were made by one professional to another in the course of a professional communication that Stone had authorized.

Dr. Wolf's statements reflect her opinions formed during her professional relationship with Stone, and her interpretation of his background history. We have assumed, as we must, that Dr. Wolf's clinical impressions were incorrect, and that her recollection of the facts was flawed. Even accepting these premises and assuming that all of the allegations in Stone's complaint are true, Dr. Wolf's statements to Dr. Rickman were not extreme or outrageous. Rather, Dr. Wolf shared her professional interpretation of the information she gathered during her sessions with Stone. The opinions she conveyed were not favorable to Stone, but they were couched in routine psychological language and their content did not surpass all bounds of decency in a civilized society. Further, Stone's complaint fails to allege an essential element of the intentional infliction tort: that Dr. Wolf intentionally or recklessly engaged in outrageous conduct to cause Stone to suffer severe emotional distress.

Finally, Stone executed an authorization that clearly and unambiguously permitted Dr. Wolf to communicate "*any* . . . information relevant to [Stone's] emotional, intellectual, or behavioral abilities and attributes." (Emphasis added.) Stone was aware that this information would include Dr. Wolf's clinical impressions and findings. By authorizing Dr. Wolf to relay "any" information to Dr. Rickman, including her opinions, Stone has waived any claim that Dr. Wolf crossed all bounds of decency in order to subject him to severe emotional distress.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado