*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NADIA AWAD,

       Plaintiff-Appellant,

v

CHARLES REILLY,

       Defendant-Appellee.

UNPUBLISHED
December 29, 2022

No. 357544
Wayne Circuit Court
LC No. 20-002929-CZ

---

NADIA AWAD,

       Plaintiff-Appellant,

v

CHARLES REILLY and CYNTHIA
CASAGRANDE REILLY,

       Defendants-Appellees.

No. 357550
Wayne Circuit Court
LC No. 20-010668-CZ

---

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

In Docket No. 357544, plaintiff appeals as of right an order granting summary disposition under MCR 2.116(C)(10) in favor of defendant, Charles Reilly (Charles), on plaintiff's claims of defamation, public disclosure of private facts, false-light invasion of privacy, and intentional infliction of emotional distress. In Docket No. 357550, plaintiff appeals as of right the same order, which granted summary disposition in favor of defendants, Charles and Cynthia Reilly (Cynthia), on plaintiff's civil conspiracy claim. We affirm in both cases.

-1-

## I. BACKGROUND

In 2009, plaintiff, who worked in the mortgage industry and was known as Nadia Ali at the time, was charged with (1) use of false pretenses to defraud in the amount of $20,000 or more, MCL 750.218(5)(a); (2) second-degree money laundering, MCL 750.411n; (3) conspiracy to commit a legal act in an illegal manner, MCL 750.157a; and (4) false statements of financial condition, MCL 750.219. In March 2009, the Detroit News and the Arab American News released articles, which stated that plaintiff had been charged with crimes in relation to "mortgage fraud." One of the articles reflected that plaintiff faced up to 20 years' imprisonment.

The Michigan Office of Financial and Insurance Regulation initiated proceedings against plaintiff. On July 19, 2009, a consent order was entered which prohibited plaintiff "from being employed by, an agent of, or control person of a licensee or registrant under the [Mortgage Brokers, Lenders, and Servicers Licensing Act (MBLSLA), MCL 445.1651 *et seq*.,] or a licensee or registrant under a financial licensing act." Plaintiff ultimately pleaded guilty to a misdemeanor in the 19th District Court, and the felony charges were dismissed. Plaintiff was sentenced to a term of probation. Thereafter, plaintiff got married and changed her last name to Awad.

Subsequently, plaintiff, Charles, and Cynthia all became residents of Woodcreek Park Subdivision in Flat Rock, Michigan (the subdivision). Charles and Cynthia are married. Plaintiff was a member of the subdivision's board of directors (the board) for a period of time. While plaintiff was a board member, plaintiff's criminal history was discovered. In 2017, Charles posted on Facebook that "[o]ne of the current board members was charged with money laundering and conspiracy to commit false pretenses and money laundering in 2009." Plaintiff contacted Oakland County Community Corrections about Cynthia, who worked as a community corrections specialist, and expressed concerns that Cynthia had improperly used the law enforcement information network (LEIN) to obtain information about plaintiff's criminal history. An investigation commenced. It was determined that Cynthia had not searched the name "Nadia Awad" through the LEIN system; instead, she obtained information about plaintiff's criminal history through a neighbor and confirmed the information through the 19th District Court. Thereafter, in August 2017, plaintiff applied to set aside her misdemeanor conviction and, in December 2017, the application was granted.

In March 2019, an election for the board was scheduled to be held. Cynthia planned to run for a position on the board. An unnamed board member posted negative comments about Cynthia on Facebook before the election. On February 27, 2019, Charles posted, in relevant part, the following on the "Woodcreek Park Homeowner Association" (the association) Facebook page:

> Two years ago, multiple neighbors mentioned a board member had been charged with mortgage fraud. I googled it, and found information in multiple articles, including a mugshot of the person in question. There was an article by Debbie Schlussel, a Detroit News article and a consent order of prohibition pursuant to section 18a of the mortgage brokers lenders and services licensing act (signed by the person) prohibiting the person from being employed by, an agent, or control person of a licensee or registrant under the MBLSLA, or registrant under a financial license. The person, who was accused of conspiring with two others, faced up to 20 years in prison on multiple charges, which included conspiracy to commit false

pretenses, and money laundering. (Detroit News column) . . . . After seeing all the articles, I felt obligated to share this information with my neighbors. I do not want a person like that anywhere near my money, and I assumed other neighbors would agree. Unfortunately, that was not the case. I was attacked for posting it even though the person's name was never divulged and the information was factual. My wife was running for a seat on the board at that time, so I was accused of using that to get my wife voted in. No. I just didn't want my money handled by the criminal above. . . . . The person arrested for the above charges actually went to my wife's employer and alleged that she misused her position to find this information. That really takes some gall! My wife, who works as a pre-trial investigator with an immaculate record, being accused by someone arrested for a felony with up to 20 years in prison. . . . Further, the person alleged that my wife defamed her. . . . You cannot defame someone if the information is true. They may not like it, but it is very much public information and factual. The employer investigated and dismissed the complaint. . . .

In February 2020, plaintiff filed suit against Charles, alleging claims of defamation, public disclosure of private facts, false light invasion of privacy, and intentional infliction of emotional distress. Plaintiff alleged that Charles's February 2019 Facebook post "falsely suggested that Plaintiff had been convicted of a felony" and that her misdemeanor conviction was expunged in December 2017. Charles generally denied liability and filed affirmative defenses, alleging his statements were true and a matter of public record. To support the affirmative defenses, Charles attached (1) the Detroit News article, (2) the Arab American News article, (3) a Wayne County register of actions, which outlined plaintiff's 2009 charges, and (4) the consent order. Charles later moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). Plaintiff opposed the motion.

At some point, plaintiff obtained information supporting that in January 2017, Cynthia searched the name "Nadia Ali" in the LEIN system. On August 19, 2020, plaintiff filed suit against Charles and Cynthia, alleging a claim of civil conspiracy. In lieu of filing an answer to the complaint, Charles and Cynthia moved for summary disposition. In relevant part, Charles and Cynthia argued that summary disposition was proper because a claim of civil conspiracy requires an underlying tort, which plaintiff could not establish. Plaintiff opposed the motion.

The trial court held oral argument on both motions and ultimately granted summary disposition in favor of Charles and Cynthia. In brief, the trial court held that summary disposition on plaintiff's defamation claim was proper because Charles's statements were true and Charles did not identify plaintiff in the Facebook post. The trial court also held that summary disposition on the claim of public disclosure of private facts was proper because "the disclosed information is public, is not offensive to a reasonable person, and is of no consequence to the public." Plaintiff's false-light claim was also dismissed because nothing in Charles's posts was false and he did not identify plaintiff in the posts. Moreover, the court concluded that Charles's conduct was not outrageous or extreme, and thus, the claim of intentional infliction of emotional distress was dismissed. And plaintiff's civil conspiracy claim against Charles and Cynthia was dismissed on the grounds that it could not survive on its own and was part of the same transaction or occurrence as the original lawsuit. These appeals followed and were consolidated "to advance the efficient

administration of the appellate process." *Awad v Reilly*, unpublished order of the Court of Appeals, entered July 13, 2021 (Docket Nos. 357544 and 357550).

## II. STANDARD OF REVIEW

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). Because the trial court relied on documentary evidence to support its decision, MCR 2.116(C)(10) is the appropriate basis for review. See *Innovation Ventures, LLC v Liquid Mfg, LLC*, 499 Mich 491, 506-507; 885 NW2d 861 (2016).

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citations omitted).]

## III. ANALYSIS

Plaintiff argues the trial court erred by granting summary disposition in favor of Charles on the defamation, public disclosure of private facts, false light, and intentional infliction of emotional distress claims. Plaintiff also argues the trial court erred by granting summary disposition in favor of Charles and Cynthia on the civil conspiracy claim. We disagree.

### A. DEFAMATION CLAIM

"The law of defamation lies at a crossroads with that of the First Amendment. The First Amendment, of course, protects, in part, freedom of speech and freedom of the press." *Reighard v ESPN, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355053); slip op at 5. "The First Amendment applies to the states by virtue of the Fourteenth Amendment. US Const, Am XIV." *Id*. at ___; slip op at 5 n 10. The following is required to establish defamation:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Hope-Jackson v Washington*, 311 Mich App 602, 620; 877 NW2d 736 (2015) (quotation marks and citation omitted).]

Importantly, "[t]ruth is an absolute defense to a defamation claim. The rule applies even when the person who allegedly has been defamed is a private citizen and the alleged defamer is not a member of the media." *TM v MZ*, 326 Mich App 227, 242; 926 NW2d 900 (2018) (quotation marks and citations omitted).

A defamatory statement, by its very definition, is one that is false. To be considered defamatory, statements must assert facts that are provable as false. Generally, accusations of criminal activity are considered defamation per se under the law and so do not require proof of damage to the plaintiff's reputation.

As an initial step, a trial court must determine whether a respondent's statements were provable as false and therefore capable of defamatory meaning, because whether a statement is actually capable of defamatory meaning is a preliminary question of law for the court to decide[.] [*Id.* at 241 (quotation marks, citations, footnote, and alterations omitted).]

In this case, Charles stated that a board member had been: (1) "charged with mortgage fraud," "conspiracy to commit false pretenses, and money laundering," (2) was arrested on these charges, (3) "was accused of conspiring with two others," and (4) "faced up to 20 years in prison on multiple charges . . . ." Evidence establishes, and plaintiff does not dispute, that she was charged with multiple crimes in 2009. Specifically, plaintiff was charged with (1) using false pretenses to defraud in the amount of $20,000 or more, (2) second-degree money laundering, (3) conspiracy to commit a legal act in an illegal manner, and (4) false statements of financial condition. Using false pretenses to defraud in the amount of $20,000 or more, second-degree money laundering, and conspiracy to commit a legal act in an illegal manner are felonies, MCL 750.218(5)(a), MCL 750.411n(2), MCL 750.157a(a); and making a false statement of a financial condition is a misdemeanor, MCL 750.219. Under certain circumstances, using false pretenses to defraud in the amount of $20,000 or more carries a penalty of 20 years' imprisonment. MCL 750.218(7)(a). Thus, Charles's statements concerning plaintiff's criminal charges and the length of imprisonment she faced if convicted are true.

Charles also referred to plaintiff as a "criminal." This statement is also true because plaintiff acknowledges she was convicted of a misdemeanor. While plaintiff notes her conviction was set aside and Charles does not dispute this assertion, the fact that the misdemeanor conviction was set aside does not change the fact that plaintiff was convicted of a crime. Indeed, the version of MCL 780.621[1] that was in effect at the time plaintiff's misdemeanor conviction was set aside stated in relevant part:

(1) Except as provided in this section, a person who is convicted of not more than 1 offense may file an application with the convicting court for the entry of an order setting aside 1 or more convictions as follows:

\* \* \*

(b) Except as provided in subdivision (c), a person who is convicted of not more than 2 misdemeanor offenses and no other felony or misdemeanor offenses may petition the convicting court or the convicting courts to set aside 1 or both of the misdemeanor convictions.

---

[1] MCL 780.621 was later amended by 2020 PA 191 and 2021 PA 78.

Thus, to qualify for a conviction to be set aside, a person must have been convicted of a crime. While the general public may not have been aware of plaintiff's misdemeanor conviction after it was set aside, "[t]he department of state police" was required to "retain a nonpublic record of the order setting aside [the] conviction and of the record of arrest, fingerprints, conviction, and sentence . . . in the case to which the order . . . applie[d]." MCL 780.623(2). The "nonpublic record" is required to be made available to certain individuals, agencies, and courts in certain circumstances. See *id*. Therefore, even though plaintiff's misdemeanor conviction was set aside, the fact of the matter remains that plaintiff was convicted of a crime and a record of that crime continues to exist.

While the undisputed evidence establishes that Charles's statements were true, plaintiff argues the statements implied that plaintiff had been convicted of a felony. "A subset of the tort of defamation is known as 'defamation by implication.' " *Reighard*, ___ Mich App at ___; slip op at 6-7.

> [S]uch a cause of action might succeed even without a direct showing of any actual literally false *statements*. Liability for defamation by implication may be imposed based not on what is affirmatively stated, but on what is implied when a defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts [such that] he may be held responsible for the defamatory implication. A defamation by implication stems not from what is literally stated, but from what is implied. [*Id*. at ___; slip op at 7 (quotation marks and citations omitted).]

When considering all of Charles's statements, they do not imply that plaintiff was convicted of a felony. Rather, Charles used the words "charged" and "accused" and referenced a potential penalty plaintiff faced if convicted. While Charles referred to plaintiff as a "criminal," this reference was only used once. The reader could have inferred that Charles was calling plaintiff a criminal because she had been charged with several crimes, as opposed to plaintiff being convicted of a felony. Because the undisputed evidence establishes that Charles's statements were true and did not imply plaintiff had been convicted of a felony, the trial court properly granted summary disposition in favor of Charles on the defamation claim.

## B. PUBLIC DISCLOSURE OF PRIVATE FACTS CLAIM

In order "to prove invasion of privacy through the public disclosure of private facts, a plaintiff must show (1) the disclosure of information (2) that is highly offensive to a reasonable person and (3) that is of no legitimate concern to the public." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 597; 865 NW2d 915 (2014) (quotation marks and citation omitted). Importantly, "[t]he information revealed must relate to the individual's private as opposed to public life. Liability will not be imposed for giving publicity to matters that are already of public record or otherwise open to the public." *Id*. at 597-598 (quotation marks and citations omitted).

Plaintiff argues that Charles exposed private facts in the February 2019 Facebook post because, at the time Charles made the Facebook post, plaintiff's misdemeanor conviction had already been set aside. Plaintiff argues that Charles obtained the information through Cynthia, who obtained information about plaintiff's criminal history through "a criminal LEIN search of

Plaintiff." However, in so arguing, plaintiff disregards the Wayne County register of actions and the news articles, which all outlined plaintiff's criminal charges. Plaintiff presented no evidence supporting that these materials were not accessible to the general public. Indeed, on appeal, plaintiff notes "[a]pparently, the Wayne County Circuit Court, had a public record of the charges against the Plaintiff . . . ." Consequently, the undisputed evidence establishes that Charles referenced "matters that [were] already of public record or otherwise open to the public." See *Doe*, 308 Mich App at 598 (quotation marks and citation omitted). Because liability cannot be imposed, summary disposition was proper. See *id*.

## C. FALSE-LIGHT INVASION OF PRIVACY CLAIM

To establish a claim for false-light invasion of privacy, a plaintiff must prove "the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 69; 919 NW2d 439 (2018) (quotation marks and citation omitted). "[M]alice is an element of false-light invasion of privacy, regardless of whether the plaintiff is a public or private figure." *Foundation For Behavioral Resources v WE Upjohn Unemployment Trustee Corp*, 332 Mich App 406, 413; 957 NW2d 352 (2020). Additionally, "the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Id*. at 410 (quotation marks and citation omitted).

In this case, the undisputed evidence does not support that plaintiff was placed in a false light. As already discussed in detail, the statements made in the February 2019 Facebook post were true and did not imply plaintiff had been convicted of a felony. The fact that plaintiff's misdemeanor conviction was set aside in December 2017 does not change the fact that plaintiff was charged with three felonies and a misdemeanor in 2009. Consequently, a genuine issue of material fact does not exist as to whether Charles "attribut[ed] to . . . plaintiff characteristics" or "conduct . . . that were false and placed the plaintiff in a false position." *Puetz*, 324 Mich App at 69 (quotation marks and citation omitted). Summary disposition in favor of Charles was therefore proper on the false-light claim.

## D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

"To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citation omitted).

> It is for the trial court to initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. But where reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery. [*Id*.]

"Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). "The test to determine whether a person's conduct was extreme and outrageous is whether

recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citations omitted). This test is a demanding one. Indeed, the necessary threshold for establishing conduct is extreme and outrageous has been described as "formidable." *Atkinson v Farley*, 171 Mich App 784, 788-789; 431 NW2d 95 (1988).

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. [*Id*. at 789 (quotation marks and citation omitted).]

In this case, plaintiff's intentional infliction of emotional distress claim is based on Charles's 2019 Facebook post, which contained information that plaintiff had been charged with multiple crimes, including several felonies. We fail to see how Charles's posting goes "beyond all possible bounds of decency" so as to be "regarded as atrocious, and utterly intolerable in a civilized community." See *id*. Indeed, plaintiff was charged with multiple felonies and a misdemeanor in 2009, and plaintiff ultimately pleaded guilty to a misdemeanor. The information was publicly available through the online news articles and through the Wayne County register of actions. While plaintiff notes that her misdemeanor conviction was set aside and Charles does not challenge this, the fact of the matter remains that plaintiff was charged with several felonies. Additionally, while members of the board likely would have been able to determine that plaintiff was the individual Charles was referring to in the post, Charles did not refer to plaintiff by name. A question of fact did not exist as to whether Charles exhibited extreme and outrageous conduct. Rather, the trial court properly concluded that Charles's statements essentially amount to "mere insults, indignities, . . . annoyances, petty oppressions, or other trivialities," and such statements are not actionable. See *Doe*, 212 Mich App at 91.[2]

---

[2] We note that plaintiff devotes a significant portion of her brief on appeal to arguing that Cynthia obtained information about plaintiff's criminal history by illegally searching the LEIN system. However, plaintiff only named Charles as a defendant in case number 20-002929-CZ. Therefore, Cynthia's alleged actions are irrelevant for purposes of determining whether summary disposition was proper on the defamation, public disclosure of private facts, false light, and intentional infliction of emotional distress claims. Indeed, "[a] party is bound by [his or her] pleadings, and it is not permissible to litigate issues or claims that were not raised in the complaint." *Bailey v Antrim Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357838); slip op at 6 (quotation marks and citation omitted; second alteration in original). Thus, we did not consider Cynthia's alleged illegal acts when analyzing whether summary disposition in favor of Charles was proper.

E. CIVIL CONSPIRACY CLAIM

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Swain v Morse*, 332 Mich App 510, 530; 957 NW2d 396 (2020) (quotation marks and citation omitted). "In addition, to establish a concert-of-action claim, a plaintiff must prove that all defendants acted tortiously pursuant to a common design that caused harm to the plaintiff. For both civil conspiracy and concert of action, the plaintiff must establish some underlying tortious conduct." *Urbain v Beierling*, 301 Mich App 114, 132; 835 NW2d 455 (2013) (quotation marks and citations omitted).

In this case, plaintiff alleged that Charles and Cynthia "conspired to defame and otherwise slander . . . Plaintiff by publishing Plaintiff's prior criminal charges . . . through the use of social media published to members of the Woodcreek Park Homeowner's Association." Plaintiff further alleged that Charles and Cynthia conspired to invade her privacy and intentionally inflict emotional distress upon plaintiff. However, as already discussed in detail above, summary disposition on the defamation, public disclosure of private facts, false light, and intentional infliction of emotional distress claims was proper because the information published by Charles was true and was a matter of public record. Thus, because plaintiff failed to create a genuine issues of material fact to sustain these claims, plaintiff cannot rely on these torts to support her civil conspiracy claim.

Plaintiff also alleged that Cynthia violated MCL 28.214, MCL 752.794, MCL 752.795, and MCL 752.796, and appears to suggest that Charles conspired with her to violate these statutes. While violation of a statute can factor "into a common-law negligence cause of action," plaintiff does not provide authority to support that a violation of these statutes would constitute actionable torts. *Randall v Mich High Sch Athletic Ass'n*, 334 Mich App 697, 717; 965 NW2d 690 (2020). Additionally, "generally speaking, a plaintiff cannot make a viable claim for money damages based strictly on violation of a statute unless the Legislature provides for a private statutory cause of action." *Id*. "[A] plaintiff has no private cause of action to enforce [a statutory] right unless (1) the statute expressly creates a private cause of action, or (2) a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions." *Lane v KinderCare Learning Ctrs*, 231 Mich App 689, 695-696; 588 NW2d 715 (1998).

In this case, plaintiff fails to explain or rationalize how violations of these statutes would create actionable torts or how she has a private cause of action under any of the listed statutes. Plaintiff also does not explain or rationalize how Cynthia violated the statutes. Instead, plaintiff argues in a cursory manner that the statutes were violated. Parties "may not merely announce [their] position and leave it to this Court to discover and rationalize the basis for [their] claims, . . . nor may [parties] give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). Consequently, because plaintiff merely announced her position without providing binding authority or meaningful analysis, the argument is abandoned and need not be considered by this Court. See *id*. Nonetheless, to the extent we have considered the argument, we conclude that plaintiff cannot rely on MCL 28.214, MCL 752.794, MCL 752.795, and MCL 752.796 to support her civil conspiracy claim because plaintiff does not have private causes of action under those statutes. Consequently, the trial court properly granted summary disposition on plaintiff's civil conspiracy claim. See *Smith Living Trust v Erickson Retirement Communities*, 326 Mich App 366, 395-396; 928 NW2d

227 (2018) (holding that the trial court properly granted the defendants' motion for summary disposition when the plaintiff failed to provide sufficient evidence of a separate actionable tort).[3]

In light of our conclusions, the remainder of the parties' arguments on appeal are rendered moot and we decline to address them. See *Attorney General v Pub Serv Comm*, 269 Mich App 473, 485; 713 NW2d 290 (2005).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett

---

[3] Plaintiff states on appeal that discovery was still open when the trial court granted the motions for summary disposition. However, plaintiff does not explain or rationalize this argument or cite supporting authority. Moreover, plaintiff fails to explain or rationalize how further discovery would have uncovered factual support for plaintiff's positions. Because plaintiff merely announced her position without providing binding authority or meaningful analysis, the argument is abandoned and need not be considered. See *Houghton ex rel Johnson*, 256 Mich App at 339.